BRYSON, Circuit Judge,
dissenting in part.
I concur in all parts of the majority opinion except for Part I of the Discussion section, which holds that the Board erred *966 in construing claims 1 and 2 of the '605 patent. I would sustain the Board's construction of those claims and the invalidity ruling based on its construction of those claims.
Claims 1 and 2 of the '605 patent (copied in Gandhi’s claims 3 and 4) recite three steps: (1) supplying the catalytic converter with exhaust gas containing an excess of oxidizing constituents; (2) supplying the catalytic converter with exhaust gas with exhaust gas containing an excess of reducing constituents; and (3) during the period between those two steps, supplying the catalytic converter with exhaust gas that has a lower content of oxidizing constituents than in the oxidizing step and a lower content of reducing constituents than in the reducing step. The intermediate step ends at the earliest when the catalytic converter is filled by exhaust gas delivered during that step. In other words the three steps of the claims consist of two distinct endpoint states and a transition phase between those endpoints.
The Board found that the claims did not require that the exhaust gas supplying steps be separate and distinct from each other or that the intermediate step be controlled in terms of composition and duration. The majority agrees with the Board that the intermediate step is not controlled in any way, but it concludes that Board erred in finding that the steps were not required to be separate and distinct. I believe that the issues are interrelated and would hold that the Board was correct on both points.
The logic of the Board’s position can be explained by using a simple analogy: consider a first step consisting of supplying an acidic solution; a second step consisting of supplying a basic solution; and a third step consisting of supplying a neutral solution during the transition time between the first and second steps. In that example, the neutral solution would simply be a natural and inevitable consequence of the mixture created by transitioning between the acidic and basic states. The same principle applies here. As the Board explained, the claim language is broad enough to read on a system that transitions smoothly from a predominantly oxidizing mixture to a predominantly reducing mixture. The Board explained that the third step requirement is satisfied as long as the quantity of oxidizing constituents is lower than in the first step and the quantity of reducing constituents is lower than in the second step. That means that the intermediate step will naturally occur during the transition between the oxidizing and reducing states. The Board is therefore correct that the transition step necessarily occurs between the other two steps.
Beckmann argues that the claims “require the, supply of three separate and distinct gases, where the composition of the third exhaust gas and the amount of time the third exhaust gas is supplied are both controlled.” That is, Beckmann argues that the transition phase constitutes a separate and distinct step because transition phase requires that a specific composition of gas be present for a specific amount of time. As the majority acknowledges, however, claims 1 and 2 of the '605 patent contain no requirement that the amount of time that the third exhaust gas is supplied be controlled. Thus, the claims place no constraints on the transition; they only require the transition to occur. And while it is true that the claimed exhaust gases in the three steps differ in composition, that is simply the necessary product of transitioning from an oxidizing to a reducing mixture.
The majority characterizes the three claimed steps as separate and distinct in part because the structure of the claims identifies them as “three different supply *967 ing steps,” and states that the third step occurs between the first and second steps, such that the claim “imposes a sequential requirement that the third step occur between the first and second steps.” But the fact that the claims identify three steps does not mean that the steps necessarily constitute separate and distinct states. As discussed above, the intermediate step lacks the controlled composition or duration that would allow it to be an identifiable state. Without a substantive way of characterizing the intermediate state, the three states are “separate and distinct” only by virtue-of the claim characterizing them as such. Although the gas in the three states differs — lean, rich, and in between — the characterization of the gas as having three distinct states is entirely arbitrary. The gas could as easily be divided into five stages — lean, mostly lean, intermediate, mostly rich, and rich. The claims would still not capture anything other than transitioning between two distinct levels.
The majority notes that the claims use the terms “supply” and “fill” with reference to the gases of each step, which the majority concludes is consistent with the steps being separate and distinct. The use of those terms, however, is entirely consistent with the construction of the claims adopted by the Board and does not add an additional limitation. As the gas supply transitions from lean to rich, the mixture of the gas that is supplied to — and fills— the catalytic converter will necessarily begin lean, transition to intermediate, and then end up as rich. Nothing defines those states as separate and distinct except Beckmann’s characterization of them as such.
Finally, the fact that claim 1 of the '605 patent recites that the intermediate step “is terminated at the earliest” when the catalytic converter “is predominantly filled by exhaust gas delivered in [the] step between the oxidizing constituents supplying step and the reducing constituents supplying step” contributes nothing to defining the intermediate step as “separate and distinct,” because the gas that is delivered in the step between the oxidizing and reducing steps simply consists of gas that is less oxidizing than the gas of the first step and less reducing than the gas of the second step. All that is required of the second stage gas, therefore, is that the converter be predominantly filled with gas that is in transition from the lean to the rich state. For the reasons given by the Board, that does not define a “separate and distinct step,” as opposed to a transient transition phase.
With regard to the issue of the construction of claims 1 and 2 of the '605 patent (and thus the corresponding Gandhi claims 3 and 4),. I therefore respectfully dissent.